David R. Welch (SBN 251693)
Aluyah I. Imoisili (SBN 245572)
**D | R WELCH ATTORNEYS AT LAW**
500 South Grand Avenue, 18th Floor
Los Angeles, California 90071
Phone: (213) 596-9008
Fax: (213) 536-4589
Email: litigation@drwelchlaw.com

*Attorneys for Plaintiff Quonset Partners, LLC*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUONSET PARTNERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF COACHELLA, a municipal corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:<br><br><br><br>**COMPLAINT FOR:**<br><br>1) **VIOLATION OF 42 U.S.C. § 1983;**<br>2) **CIVIL CONSPIRACY; AND**<br>3) **DECLARATORY RELIEF** |

## NATURE OF THE ACTION

1. This action seeks to compensation for the City's federal and state law procedural and substantive due process and takings clause violations so blatant, the whole debacle reeks of deliberate malfeasance.

2. Specifically, the City stripped Plaintiff Quonset Partners, LLC ("Quonset") of significant market value and goodwill by refusing to record and enforce a validly created public easement on real property belonging to Glenroy Coachella, LLC ("Glenroy"). Quonset owns the land near Glenroy's property, which Quonset leases (through a sublease with Quonset's original tenant) to The Coachella Lighthouse, LLC ("Lighthouse"), a California state-licensed commercial cannabis retailer.

3. The easement guaranteed Quonset, Lighthouse, and the rest of the tax paying public access to a parking lot on the real property adjacent to Lighthouse's business on Quonset's land. Attached hereto as Exhibit A is a parcel map that depicts the two parcels of land where Quonset and Lighthouse are located (in green) and the parking lot on Glenroy's property adjacent to it.

4. Glenroy expressly granted the City the subject public easement pursuant to California's "Mello-Roos Community Facilities Act of 1982" (the "Mello-Roos Act").

5. The stated purpose of the Mello-Roos Act is to provide an alternate method for local governments to finance capital facilities and services. Essentially, the Mello-Roos Act authorizes a local government agency to create special geographic districts wherein the local government can levy a special tax on residents specifically to fund the purchase, construction, expansion, or rehabilitation of public facilities such as parks, schools, libraries, or any other buildings. (*See* Cal. Gov. Code § 53313.5.)

6. Here, the City raised the Mello-Roos Act monies in question through the creation of The City of Coachella Community Facilities District No. 2018-1 (Glenroy

(the "Glenroy CFD"). Through the Glenroy CFD, the City issued bonds. Those bonds are to be paid through the City's implementation and collection of a Mello-Roos Act tax (the "Special Tax") imposed upon the public.

7. The City has extracted and continues to extract hundreds of thousands of dollars from Quonset and the public in Special Tax specifically designed to fund development of infrastructure that would support the hotel project. Quonset, Lighthouse, as well as other local businesses and residents have been paying this Special Tax for years. This is because Quonset, Lighthouse, and the general public are and were always the intended beneficiaries of the validly created, yet un-recorded easement for use of Glenroy's property.

8. In addition, over the past few years, Quonset, Lighthouse, and other residents have paid thousands in sales and use taxes, business license taxes, income taxes, and other remittances to the City.

9. Now, Glenroy acting in concert with the City has sold the hotel property to a third party free and clear of the public easement, to the detriment Quonset's and Lighthouse's property rights.

10. Notwithstanding the sale, the City continues to collect the Special Tax and other amounts from Quonset, Lighthouse, and members of the public.

11. Moreover, the City also seeks to revoke Lighthouse's conditional use permit to operate its business on the adjacent property, among other reasons, on the grounds that Glenroy cannot complete the hotel now that the property has been sold to a third party, and the failure to do so breaches the City's separate agreement with Lighthouse.

12. The injustice spawned by the City's conduct is palpable. Accordingly, Quonset brings this action to recover an award of compensatory, other damages, and attorneys' fees allowable by law the City caused by failing to record the public easement that Quonset, Lighthouse, and other residents have funded in violation of their substantive and procedural due process rights.

# PARTIES

13. Plaintiff Quonset is a limited liability company organized under the laws of California, and authorized to do business and is doing business in the CFD.

14. Defendant City is a municipal corporation and a political subdivision of the State of California.

15. The true names and capacities of all remaining Defendants, whether individual, corporate, associate or otherwise, are named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff who thereby sues these Defendants by those fictitious names. Plaintiff is informed and believe, and on that basis allege, that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein. The names, capacities and relationships of DOES 1 through 100 will be alleged by amendment to this Complaint when those names are known. Whenever it is alleged herein that any act or omission was also done or committed by a specifically named Defendant generally, Plaintiff intends to allege and does allege that the same act or omission was also committed by each and every Defendant named herein, including the DOE Defendants, both separately and in concert or conspiring with the other Defendants, unless stated otherwise. Plaintiff prays for leave of this Court to amend this Complaint when those names and capacities are ascertained.

16. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to the facts alleged herein, each Defendant was the agent, servant or employee of each of the other Defendants, and as such, was acting within the course and scope of such agency or employment and with the express permission of, consent to and/or ratification by Defendants, and each of them.

17. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants, including DOES 1 through 100, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

18. Plaintiff is informed and believes, and based thereon alleges, that at the time the events complained of herein occurred, Defendants were engaged in a joint enterprise, whether social or otherwise, that each benefited by, and held a pecuniary interest in, such that each Defendant is vicariously liable for the acts of each other Defendant.

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 12 U.S.C. § 2614 because the matter arises under federal law, specifically, 42 U.S.C. § 1983.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 139(b) and 1409(a).

21. Quonset has standing to bring this action pursuant to California Code of Civil Procedure 526a because this is an action to obtain a judgment against, and prevent any illegal waste of, or injury to, the property of, the City of Coachella (the "City"). Additionally, Quonset, as a member of the tax-paying public, has a substantial interest in the outcome of this controversy.

22. Pursuant to California Government Code section 905.1, Quonset has exhausted all administrative remedies, or is excused from filing a claim, because this is an action for taking of, or damage to, private property pursuant to section 19 of Article I of the California Constitution. *See also Knick v. Township of Scott*, 588 U.S. ___ (2019).

## GENERAL ALLEGATIONS

**A.  The City Creates a Public Easement But Fails to Record It.**

23. Lighthouse was, and is, a retail commercial cannabis located at 84-161 Avenue 48, Coachella, within a commercial center located at the southeast corner of Avenue 48 and Van Buren Street (*see* Assessor Parcel Numbers 603-220-063 and portions of 603-220-066). The property belongs to Quonset, who subleases it to Lighthouse.

24. In July 2017, Glenroy had expressly granted the City a public easement to a parking lot at 84-150 Avenue 48, Coachella, California 92201 (*see* Accessor's Parcel Numbers 603-220-063 and 603-220-069)—the premises adjoining the real property where Glenroy was to develop a hotel. (*See* Exhibit A [Parcel Map and Resolution 2017-46].)

25. In May 2018, the City entered into an Acquisition Agreement (the "Agreement") with Glenroy under California's Mello-Roos Act for the City to fund certain infrastructure appurtenant to the construction of a hotel project Glenroy was developing on its property on which it had granted the City a public easement. Attached hereto as Exhibit B is a true and correct copy of the Agreement. Under the Agreement, the City formed the Glenroy CFD.

26. Despite the easement being created, the City never recorded it, as it had a duty to do.

27. In the interim, Quonset, Lighthouse, and the public paid significant sums in Special Tax that funded infrastructure improvements that benefited Glenroy's hotel project.

28. In 2019, Glenroy fell into financial turmoil and became engaged in a dispute with its construction lenders, U.S. Real Estate Credit Holdings III-A, LP ("USRECH").

29. Ultimately, Glenroy lost control of its hotel project to Edwin W. Leslie (the "Receiver"), appointed by the Honorable Randall Stamen (in the Superior Court of Riverside County, Case No.: RIC1905743) in a separate action against its lenders.

30. In April 2020, the Receiver ordered a fence to be built around the parking lot that the City had maintained and operated up to that point. The fence blocked the agreed-to, valid, and yet unrecorded public easement.

31. On April 15, 2020, Quonset advised the Receiver that the fence would trespass on land it had the right to traverse and would also prevent the public from obtaining access to the parking lot per the City's public easement.

32. The Receiver refused to allow the public access to the parking lot unless Quonset agreed to pay an additional $20,000 a month under a private agreement, separate and apart from amounts Quonset and the public had already paid in Special Tax and other taxes.

33. The following day, on April 16, 2020, Quonset alerted the City to the Receiver's plans to erect a fence around the parking lot with the intention of preventing the public from accessing it in violation of the City's public easement.

34. In response, the City's staff acknowledged that the Receiver's conduct would violate the public easement and that the easement had to be recorded. In no uncertain terms, Luis Lopez, the City's Development Services Director, stated in an email:

> [A]ny fence that blocks a parking stall or driveway aisle would not normally be allowed. Additionally, the City will not issue any new building permits on the Glenroy Resort properties until a reciprocal access easement is recorded in favor of Parcel 3 of Parcel Map No. 37310, as required by Condition #2 of Resolution No. 20178-46 (attached herein). **The fact that the Parcel Map recorded without any easement for parking benefitting Parcel 3 is a violation of the conditions of approval (see attached recorded easement), and needs to be remedied prior to any more construction activity taking place on the Glenroy Resort parcels.**

(*See* Exhibit C [a true and correct copy of the April 16, 2020 email from Luis Lopez to Quonset] (emphasis added).)

35. Notwithstanding Mr. Lopez's admission that the City was required to record the public easement, the City did nothing.

36. Instead, the City allowed the Receiver to erect the fence, blocking access completely to the parking lot (and encroaching on portions of Quonset's land).

1  Attached hereto as Exhibit D are true and correct photographs of Quonset's property
2  depicting portions of the fence that the Receiver erected.
3       37.    In the meantime, the City began to seek to revoke Lighthouse's
4  conditional use permit.  On or about April 15, 2020, the City's Planning Commission
5  revoked Lighthouse's conditional use permit  in part because the Glenroy hotel had
6  not been completed.  Lighthouse timely appealed the City's revocation.
7       38.    On or about October 8, 2020, Lighthouse ultimately resolved its issues
8  by entering into a Memorandum of Understanding (the "MOU") with the City.  Under
9  the MOU, the City agreed to forgo its revocation of Lighthouse's conditional use
10 permit in exchange for compliance by other parties and Lighthouse's payment to the
11 City of transient occupancy tax ("TOT Tax") (i.e., taxes typically guests for staying
12 at a hotel or resort) until Glenroy completed the hotel project.
13      39.    At all relevant times, Lighthouse paid the TOT Tax to the City pursuant
14 to the MOU.

**B.  Glenroy Agrees to Sell the Hotel Property Without the Public Easement.**

16      40.    In February 2021, Glenroy filed a petition for bankruptcy protection in
17 the United States Bankruptcy Court for the Central District of California (*In re
18 Glenroy Coachella, LLC,* Case No. 2:21-bk-11188-BB) (the "Bankruptcy Court").
19 The Bankruptcy Court appointed Richard A. Marshack as the Chapter 7 Trustee of
20 Glenroy's bankruptcy estates.
21      41.    Mr. Marshack, acting on behalf of the Glenroy, negotiated a compromise
22 with USRECH, Glenroy's construction lenders, to list the hotel property for a sale at
23 which USRECH could credit bid all or a portion of its pre-petition claim in the
24 Bankruptcy Court.
25      42.    Upon learning that proposed sale would potentially extinguish the public
26 easement and that the City had still failed to record the easement or insist that it be
27 excluded from elimination, on September 29, 2021, Quonset initiated an adversary
28

1 proceeding in the Bankruptcy Court, initially seeking an injunction or order that any
2 sale be subject to the public easement that the City had failed to record.

3   43.   On September 30, 2021, the Court heard Mr. Marshack's *Motion for
4 Order Authorizing: (1) Sale of Real Property Located at 84151 Avenue 48, Coachella,
5 CA and Related Assets: (a) Outside the Ordinary Course of Business; (b) Free and
6 Clear of Liens, Claims, and Encumbrances; (c) Subject to Overbid; (d) for
7 Determination of Good Faith Purchaser Under 11 U.S.C. § 363(m); and (2)
8 Assumption of Executory Contracts and Unexpired Leases Under 11 U.S.C. § 365*
9 (the "Hotel Sale Motion").

10   44.   Quonset appeared at the hearing and opposed the Hotel Sale Motion to
11 the extent that the proposed sale would not be subject to the unrecorded easement.  In
12 response, the City joined USRECH to insist that the Hotel Sale Motion be granted as
13 proposed.

14   45.   The Bankruptcy Court granted the Hotel Sale Motion, but did not enter
15 the order until October 22, 2021.  The version of the order the Bankruptcy Court
16 entered not only included specific language that expressly included the City's public
17 easement as one that would be extinguished upon the sale to USRECH but also was
18 signed by the City and Mr. Marshack on Glenroy's behalf.

19   46.   Quonset is informed and believes, and on this basis alleges, that the City
20 and Glenroy coordinated to ensure that the public easement was extinguished, and not
21 preserved, once and for all in the Hotel Sales Motion order.  Attached hereto as
22 Exhibit E is a true and correct copy of the Bankruptcy Court's order.

23   47.   In allowing the public easement to lapse, the City acted under a policy,
24 custom, or ratification of behavior amounting to an expression of official policy when
25 they denied Plaintiff's rights.  Specifically, Plaintiff is informed and believes, and on
26 this basis alleges, that the City has a policy that authorizes City officials to allow
27 abandon un-recorded public easements without due process or proper notice to the
28 public.

8
COMPLAINT

48. The unfortunate, inequitable consequence of this misconduct is that Quonset, Lighthouse, and the public—who financed the infrastructure under the Special Tax and through other remittances to the City—will lose all rights, ownership, and claims to this public easement upon which they have detrimentally relied.

## CLAIMS FOR RELIEF

## CLAIM I FOR VIOLATION OF 42 U.S.C. § 1983

## (RIGHT TO PROCEDURAL DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND CALIFORNIA CONSTITUTION)

**(By Plaintiff Against All Defendants)**

49. Plaintiff hereby incorporates by reference herein each of the preceding allegations.

50. Glenroy granted the City a public easement on Glenroy's property for the subject parking lot.

51. In exchange, Mello-Roos Act monies were used to improve certain of Glenroy's real property, including the parking lot.

52. That easement, validly existing, was never recorded by the City despite repeated demand by Plaintiff.

53. The public easement benefits, and is expressly designed and written to so benefit Plaintiff and the general public

54. The City failed and refused to file and record the public easement which it had a duty to do.

55. The City has no, and has offered no, lawful and/or legitimate reason or justification for its failure.

56. The public easement remains unrecorded as of the date of this Complaint.

57. Plaintiffs, under both the California and U.S. Constitutions, have procedural due process rights which the City violated by not filing and recording the public easement.

58. As a result, by their actions, Defendants have deprived Plaintiff of its rights, privileges, and/or immunities secured by both the California and U.S. Constitutions.

## CLAIM II FOR VIOLATION OF 42 U.S.C. § 1983
## (RIGHT TO SUBSTANTIVE DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND THE CALIFORNIA CONSTITUTION)
## (By Plaintiff Against All Defendants)

59. Plaintiff hereby incorporates by reference herein each of the preceding allegations.

60. Glenroy granted the City a public easement on Glenroy's property for the subject parking lot.

61. IN exchange, Mello-Roos Act monies were used to improve certain of Glenroy's real property including the parking lot.

62. Mello-Roos monies are monies raised by City by issuing bonds. Those bonds are paid off by a City, including defendant City, implementing and collecting upon a Mello-Roos tax, the Special Tax, imposed upon the public in that City.

63. Quonset as well as other local businesses and residents, have been paying this Special Tax for years.

64. Quonset and the general public thus have ownership rights to, and in, the public easement. They have each "paid" valid consideration for the public easement.

65. The public easement benefits, and is expressly designed and written to so benefit, Quonset and the general public

66. The City failed and refused to file and record the public easement which it had a duty to do.

67. The City has no, and has offered no, lawful and/or legitimate reason or justification for its failure to file and record the public easement.

68. The public easement remains unrecorded as of the date of this Complaint.

69. Because the public easement remains unfiled and unrecorded, Quonset and the general public, who have each been paying monies for the public easement in the form of Special Tax, are owed, and own right to and interest in, the public easement.

70. Quonset, under both the California and U.S. Constitutions, has substantive due process rights which the City has violated by not filing and recording the public easement.

71. As a result, by their actions, Defendants have deprived Quonset of its rights, privileges, and/or immunities secured by both the California and U.S. Constitutions.

## CLAIM III FOR VIOLATION OF 42 U.S.C. § 1983
## (INVERSE CONDEMNATION UNDER U.S. CONSTITUTION AND CALIFORNIA CONSTITUTION)
### (By Plaintiff Against All Defendants)

72. Plaintiff hereby incorporates by reference herein each of the preceding allegations.

73. Mello-Roos Act monies were used to improve certain of Glenroy's real property.

74. In exchange, Glenroy granted the City a public easement on Glenroy's property for the subject parking lot.

75. Mello-Roos monies are monies raised by City by issuing bonds. Those bonds are paid off by a City, including defendant City, implementing and collecting upon a Mello-Roos tax imposed upon the public in that City.

76. Quonset as well as other local businesses and residents, have been paying this Special Tax for years.

77. Quonset and the general public thus have ownership rights to, and in, the public easement. They have each "paid" valid consideration for the public easement.

78. The City failed and refused to file and record the public easement which it had a duty to do.

79. The City's activities caused a taking and damaging of Plaintiff's property. Quonset's real estate is less valuable without public easement access to Glenroy's parking lot.

80. This taking was a direct and necessary result of the City's failure to record the public easement.

81. Plaintiff's injury and damage were the result of the City's defective, negligent, reckless, and/or intentional plan, design, and improper failure to record the public easements.

82. As a result of the above described damage, Plaintiff has been damaged in an amount to be proven at the time of trial.

83. Plaintiff has received no compensation for the damage to their property interests.

84. Plaintiff has incurred and will incur attorneys' fees, engineering fees, contractor's fees, and appraisal fees because of this proceeding, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of California Code of Civil Procedure section 1036 and other applicable law.

## CLAIM IV FOR CIVIL CONSPIRACY

**(By Plaintiff Against All Defendants)**

85. Plaintiff hereby incorporates by reference herein each of the preceding allegations.

86. Defendants knowingly and willfully conspired and agreed among themselves to extinguish the public easement the City had a duty to record for the benefit of Quonset and other members of the public.

87. Pursuant to said conspiracy, and in furtherance thereof, the City and Glenroy, entered consented to the Hotel Sales Motion and October 22, 2021 order without ensuring to record the public easement.

88. As a proximate result of the wrongful and illegal conduct of Defendants, and each of them, Plaintiff suffered damages by being deprived of money paid in Special Tax and other sales and use taxes, business taxes, and fees that were used to finance the infrastructure to support the public easement.

89. Defendants, and each of them, committed the wrongful conduct herein alleged maliciously and to oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages in an amount to be determined at trial.

## CLAIM V FOR DECLARATORY RELIEF
### (By Plaintiff Against All Defendants)

90. Plaintiff hereby incorporates by reference herein each of the preceding allegations.

91. There is a continuing, ripe and justiciable controversy concerning whether and in what form the City obtained a public easement on the parking lot owned by Glenroy sold pursuant to the Hotel Sale Motion order, notwithstanding the fact that the City did not record the easement.

92. Plaintiff herein claims it had rightful use of the parking lot, notwithstanding the easement's lack of recordation, by virtue of the City's public easement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment be entered against the City, and DOES 1 through 100, and each of them as follows:

1. for declaratory relief to confirm that the City had an easement for public access to the parking lot located at Glenroy's property, irrespective of the current form of title;

2. for a declaratory judgment declaring that the City's failure to record and defend the public easement is unconstitutional and a violation of Quonset's and the public's substantive and procedural due process rights;

3. for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

4. for a judgment for interest thereon at the legal rate;

5. for an award of attorneys' fees and costs as allowed by law; and

6. for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 1, 2022            **D | R WELCH ATTORNEYS AT LAW**

By: /s/ Aluyah I. Imoisili
Aluyah I. Imoisili

*Attorneys for Plaintiff Quonset Partners, LLC*